**UNITED STATES ex rel. MURPHY v. WARDEN OF CLINTON PRISON.**

District Court, N. D. New York.
Sept. 14, 1939.

Joseph G. M. Browne, of Brooklyn, N. Y., for relator.

John J. Bennett, Jr., Atty. Gen., of New York (Patrick H. Clune and Bernard L. Alderman, Asst. Attys. Gen., of counsel), for respondent.

COOPER, District Judge.

This is a writ of Habeas Corpus claimed to involve the constitutionality of Section 1897, Subdivision 1-a of the Penal Law of the State of New York, Consol.Laws, c. 40.

The relator was convicted in the Court of General Sessions, County of New York upon an indictment found by the Grand Jury for the County of New York, charging the relator and others with feloniously possessing a machine gun in violation of the said section of the penal law.

The relator was sentenced to imprisonment in a State prison for a term not less than seven nor more than 14 years.

The relator appealed such judgment of conviction to the Appellate Division of the State of New York, First Department People v. Murphy, 294 N.Y.S. 498, and the said judgment was affirmed by the Appellate Division without opinion. Thereafter the relator appealed to the Court of Appeals of the State of New York from the decision of the Appellate Division and the Court of Appeals affirmed the judgment of the Appellate Division, also without opinion, one Judge dissenting.

Thereafter a petition for leave to appeal to the Supreme Court of the United States was presented to Mr. Justice Stone of that Court.

The petition was denied on March 29, 1938, without prejudice to an application to any other Judge. The denial was stated to have been made on these grounds:

"In this case I do not find that the record shows that the action of the trial court in denying the motions made at the close of the State's case and at the close of the whole case, necessarily involved any ruling on the constitutional question. For all that appears, the denial of the motions may have been on the ground that there was sufficient evidence to go to the jury without the aid of the statutory presumption.

"There seems to be no specific objection to the Court's charge to the jury that it should consider the presumption, and no request on constitutional grounds to charge otherwise. I deny the application without prejudice to appellants application to any other Judge."

Petition for rehearing of the application for leave to appeal to the U. S. Supreme Court was made to Mr. Justice Stone in August in which petition references were made to the record of the trial to show that the Constitutional questions to which Judge Stone referred in his denial of leave to appeal in March 1938 were actually raised on the trial.

When intention to make petition for rehearing was brought to the attention of Mr. Justice Stone he wrote Mr. Browne, Attorney for the relator herein, under date of August 19, 1938, as follows:

"I will, of course, consider your application for a rehearing, if you decide to make it.

"In that case, I assume you will undertake to point out the places in the record where the Federal Question was made and to satisfy me that I have authority to act, now that the term has expired."

The petition for rehearing was denied as of June 16, 1938, without comment.

In view of the fact that Rule 33 of the U. S. Supreme Court, 28 U.S.C.A. following section 354, requires the application for a rehearing to be filed within 25 days after Judgment is entered, and counsel for the relator here substantially admitted that a Justice of the Supreme Court had no power to hear a petition for rehearing more than 25 days after the denial of the original petition on March 29th, 1938, and after the term had expired, it is reasonable to conclude that the petition for rehearing was denied because Justice Stone believed he was without authority to grant a rehearing of the petition for leave to appeal.

Thereafter and on March 1939, the relator applied to this Court for a writ of Habeas Corpus and the same was granted. Certain adjournments were had. By agreement the relator remained in custody pending decision.

The ground of the alleged unconstitutionality of the State Statute is that it is repugnant to the Constitution of the United States in that it violates the due process of law clause of the 14th amendment, U.S.C.A.

The petition on which the writ was issued set forth the grounds of illegal detention of the relator as follows:

"4. That the aforementioned indictment alleges:

"The said defendants, in the County of New York aforesaid, on the 16th day of March, 1936, felonously did have in their possession a certain machine gun, against the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity."

"5. That Statute, Section 1897, Subdivision 1(a) of the penal law of the State of New York, under and pursuant to which your petitioner was indicted, tried, convicted and sentenced, and is now detained, confined and imprisoned, so far as here applicable, reads as follows:

"A machine gun is a weapon of any description, irrespective of size, by whatsoever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun. A person who possesses or uses such machine-gun is guilty of a felony. The presence of such machine-gun in any room, dwelling, structure or vehicle shall be presumptive evidence of its illegal possession by all the persons occupying the place where such machine-gun is found."

6. That as your petitioner is informed, the said indictment is based upon the following: That on the 16th day of March, 1936, at about 11:40 P. M. the police raided the premises No. 322 West 90th Street, Manhattan, New York City, the same consisting of a four story rooming house, being a ground floor and three stories above, of which one Madeline Tully was the lessee of the entire building, renting rooms

to various tenants; that in a closet on the top floor, which opened into a common hallway, the police found a locked safe which was opened about sixteen hours later and that four machine guns were found therein; that said indictment is based upon the possession of one of these machine guns. That the indictment and conviction of your petitioner is predicated solely on his being in the building at the time. That the facts with respect to the petitioner's presence there are these: That your petitioner did not live at said premises; that on the 16th day of March, 1936, your petitioner was visiting a Mr. and Mrs. Frank Daley, who were tenants occupying a two room apartment in said building on the second floor; that your petitioner, at the time, was seated at a table, with four other persons, eating, one of them being said Mr. Daley. Your petitioner is informed and believes that the said indictment, prosecution, conviction and sentence are grounded on the theory and claim that your petitioner's mere presence in the building, by virtue of said statute, made him a "constructive occupant" thereof and amenable to said statute, and that the mere finding of such machine-gun in said building made your petitioner presumptively guilty of the illegal possession thereof.

The return states:—

4. That the judgment of the sentencing Court has not expired; that the judgment is a legal and proper one, that it is still in full force and effect.

5. That the relator's conviction was upheld unanimously by the Appellate Division and the Court of Appeals of the State of New York, each time without opinion; that he thereafter made an application for leave to appeal to the Supreme Court of the United States, which was denied.

6. That the determination of such Appellate tribunals is res-adjudicata as to this honorable Court; that the Honorable Court has no jurisdiction to entertain the within application; that no Federal question was presented in, and expressly or necessarily decided by the State Courts.

7. The Writ of Habeas Corpus should be dismissed and the relator remanded to the Warden of Clinton Prison.

Upon the return day, counsel for the respondent conceded that this Court had jurisdiction to determine the constitutionality of the State Statute, if the constitutionality was raised upon the trial and upon appeal, provided the sole evidence against the relator consisted of the presumption arising from the Statute.

In the brief subsequently filed, "however, counsel for the respondent contend that this Court of a single Judge has no jurisdiction to entertain this application and that a three Judge Statutory Court is necessary to decide the unconstitutionality of the Statute.

The question of the jurisdiction of this Court must be first disposed of.

So far as the necessity for a three Judge Court is concerned, that contention seems to be without merit.

A three Judge Court under 28 U.S.C.A. § 380 is only necessary when in a civil suit an injunction is sought restraining enforcement of a state statute on the ground of unconstitutionality. The section has no relation to Habeas Corpus proceedings. Stratton v. St. Louis R. Company, 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135. Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 67 L.Ed. 543.

Where the sole question is constitutionality, a single District Court Judge seems to have jurisdiction. Jones v. Commonwealth of Kentucky, 6 Cir., 97 F.2d 335; Frank v. Mangum, Sheriff, 237 U.S. 309, 326, 35 S.Ct. 582, 59 L.Ed. 969; Ex Parte Caesar, D.C., 27 F.Supp. 690.

The Jurisdiction of this Court, however, depends upon the question of whether or not there was sufficient evidence presented upon the trial to warrant conviction of the relator without invoking the presumption of Section 1897, Subdivision 1-a New York Penal Law of the State of New York. If there was such evidence, then the conviction did not depend upon the presumption of Section 1897, subdivision 1-a, and this Court has no jurisdiction.

To determine this question requires an examination of the record of the trial Court. This record as contained in the case on appeal in the Court of Appeals of New York State shows the following evidence:

The machine gun upon which the indictment was founded was one of four machine guns discovered in the four story building in which the defendant relator was present at the time of his arrest, and was contained in a locked safe in a locked closet in a room on the fourth floor of the building in question, about sixteen hours after the arrival of the police.

This room was just about large enough for the safe. The relator at the time of his arrest was in a locked room on the second floor of this building which room was one of a two room apartment the tenant of which, was a co-defendant Daley, and in which room five other of the defendants, jointly indicted and convicted with the relator, were present.

Ten persons were arrested at the time of this raid and subsequently indicted, six of whom, including the relator, were in the room in the Daley apartment and the other four elsewhere in the building. Six of the ten lived in or roomed in the building. The other four, including the relator, did not live or room in the building.

There were many roomers in the house. Defendants Daley and Martin occupied these two rooms on the 2nd floor, Ryan and Kane occupied separate rooms on the fourth or top floor. Defendant Madeline Tully, the lessee, occupied four rooms, and nine other rooms were rented to other persons not connected with the case.

The relator had never lived in the building. There was some evidence that he had been there several times before. The Court understands this evidence to relate to the same room of the second floor in which he was found at the time of his arrest.

In that room were found two closed but unlocked suitcases. When these suitcases were opened ammunition, magazines and silencers were found and parts of a machine gun which fitted the machine gun taken from the safe on the 4th floor.

In a bureau in the same or the adjoining room were other weapons, ammunition and parts, which fitted the machine guns found in the safe on the 4th floor.

None of these weapons, ammunition or other things were visible in the room in which the relator was arrested and there was no evidence to warrant a jury in finding that the relator had any knowledge of the things which were in the suitcase or the bureau drawer or of the machine gun locked in the safe in the small locked room on the 4th floor.

At the time of the raid, the police found this relator with six other men seated around a table eating. Upon his arrest, this relator told the police that he did not live in the house but had come there to play cards. He said that his right name was Ryan and that he also used the name of Murphy and Heel. He said he did not know any of the other six men who were with him in the room at the time of the raid. He said that that was the first time he had ever been in the apartment. When asked how he got there, he said that he heard there was a card game going on there. He stated that he lived at a certain address in Newark, N. J. Investigation subsequently showed that the address he gave in Newark was a non-existent one. There were no cards found in the room at the time of the raid, even though the police went to the great lengths of tearing up the carpets from the floor in an attempt to find playing cards.

It was sufficiently proved on the trial that what the relator said to the police officers upon his arrest as to his residence, occupation and the purpose of his visit to the room in which he was arrested, was utterly false.

It seems to this Court that in the absence of presumption of the statute, there was not sufficient evidence to warrant the conviction of the defendant for possession, jointly with others or severally, of the machine gun found in the locked safe in the locked room on the fourth floor, upon which the indictment is predicated. While there were some suspicious circumstances and one may suspect that the defendant had knowledge of the contents of the suitcases and the bureau drawer, there was no proof that would warrant the jury in concluding beyond a reasonable doubt that he had any knowledge either of the machine gun found in the locked safe on the 4th floor or weapons or ammunition and machine gun parts in the suitcase or in the bureau in the room on the second floor in which he was arrested or in the adjoining room, or that he occupied the place where the machine gun was found or any other part of the building.

Let it be assumed that the relator is a bad man and that the evidence shows that he was in the company of bad men. Even a bad man may be innocent of a crime committed in a structure in which he is present.

In any event, he will be presumed to be innocent until his guilt, unless subject to the presumption of Section 1897, Subdivision 1-a of the New York State Penal Law, is shown by evidence sufficient to convince a jury beyond reasonable doubt of his guilt.

People v. Orr, 270 N.Y. 193, 200 N.E. 783, is a case with considerable analogy.

At the close of the People's case, counsel for the defendant moved to discharge the defendant on the ground that there was not sufficient evidence to go to the jury, without the presumption of the Statute and that the statute was unconstitutional.

The record shows, among other things, as follows:

"Mr. Barra: With deference to your Honor, the defendants are about to make a motion on matters that are purely questions of law * * *.

"The Court: Yes. You are the spokesman for all the lawyers.

"Mr. Barra: Yes, I am speaking for all. (Ct.App.Rec. p. 907, F. 2716.)

"Mr. Barra: * * * Now, it is our contention that this statute violates the Fourteenth Amendment of the Constitution of the United States * * * it is illegal, it is repugnant to the constitution and should not be accepted as the law of this state, that the whole statute is void.

"The presumption in the Statute reads as follows: 'The presence of such machine gun in any room, dwelling, structure or vehicle shall be presumptive evidence of its illegal possession by all the persons occupying the place where such machine gun is found.' (Ct.App.Rec. p. 911, FF. 2731, 2732.)

"Mr. Barra: All right. Then we go on to say on the constitutionality.

"As possession of the machine gun constitutes the crime and as the presumption creates illegal possession in violation of the statute from the mere finding of the machine gun in the place occupied by the defendants, it would seem, that the presumption not only constitutes the corpus delicti but also attached the responsibility of the defendants. The presumption is limited in its application to the responsibility of the individual and we cite: Eff-Ess., Inc., v. New York Edison Company, 237 App.Div. 315, 317, 261 N.Y.S. 126.

"Now, as the mere possession of the machine gun constitutes the crime, and the presumption creates illegal possession in the occupant, the statute, it seems, comes squarely within the inhibition of the Manley vs. Georgia case, as it presumes the corpus delicti, as well as the responsibility, and as it establishes a presumption in favor of the People it is arbitrary and void as violative of the due process clause of the Fourteenth amendment.

"Now this is the General Motion.

"The Court: On the grounds just stated, the motion is denied.

"Mr. Barra: We will except. (Ct.App. Rec. pp. 924–925, FF. 2771, 2773.)"

That said motion and claim was renewed at the close of the whole case and denied, and the record thereof, so far as here material, reads as follows:

"The Court: * * * Make your motions first. Make them as you did make them at the close of the People's case, in the same language and in the same form and to the same force and effect * * * and the Court rules the same and allows an exception to each of the defendants, with the same force and effect." (Ct.App. Rec. p. 1085, F. 3254.)

"The Court: The motions are all on the record. The motions were recorded as made with the same force and effect as made at the close of the people's case and the same rulings with exceptions to all parties." (Ct.App.Rec. p. 1088, F. 3263.)

The Court, having denied the motion made at the close of the people's case and at the close of the entire case, charged the jury that the statute was controlling (Record Page 1226, Fol. 3676).

The court further charged: "You will observe from the statute how comprehensive it is * * * and the law in its wisdom has the unusual provision of making its mere presence sufficient to create a presumption * * * as to put you to the explanation of saying why * * * it creates a presumption which must be explained away or put you to the necessity of explaining it away." (Rec. Fol. 3679, 3680.) And again in the charge it was said: "I charge as a matter of law that if a machine gun was found there * * * if there was that kind of a gun there, the gravamen, the body of the crime is laid." (Rec. Fol. 3722, 3723.)

At the close of the charge, counsel for the defendant, including the relator, said: "The defendant excepts to your Honor's charge as a whole * * *" (Rec. Page 1279, Folio 3836.)

It is true that the exception was not specific as to the Court's charge concerning the Statute, but the motions made on the ground of the unconstitutionality of the statute make it clear that the defendants took the position that there was no evidence to go to the jury so far as the relator was concerned without the presumption of

the statute and that the indictment as to the relator should be dismissed, and that the Court so understood.

The District Attorney was forced to contend on the appeal that the trial Court's construction of the Statute was proper and the statute as applied in the case was not unconstitutional.

In Point 1 of his brief in the Court of Appeals the District Attorney said: "The phrase 'persons occupying the place' read in the light of its context, undoubtedly refers to persons occupying the room, dwelling, structure or vehicle in which the machine gun is found" and is not limited, as counsel contends, to persons merely occupying the "Room or place in the dwelling, house, structure, etc., where the machine gun is found."

Thus it is clear that the trial court construed the statute to mean that any occupant of any part of such a structure was presumptively guilty of illegal possession of the machine gun found in the locked safe in the locked room on the 4th floor. It is also clear, as far as the relator is concerned, that any person present in the building as a visitor was deemed to be a person "occupying the place where such machine gun is found."

It matters not that a construction might have been given to this statute which would limit the "place where the machine gun was found," to a particular room or enclosure in the building in which room or enclosure the machine gun was found, and would limit the word "occupy" to one who was the actual occupant of such room or enclosure in the building or who had, alone, or in common with others, exclusive dominion and control over such room or enclosure and exclusive right of access thereto. No such construction was given to this statute on this trial. "Occupy" was construed as covering any person who was present in the building and no matter in what part of the building or for what purpose he was present, whether as visitor, tradesman, mechanic or otherwise, and "place" was construed to cover the whole structure.

The breadth of the presumption as applied in this case is manifest. The word "structure" is one of the broadest words in the English language and is very comprehensive. All buildings of any name and nature are structures. Structure would include: Hotel, apartment house, office building, railroad station, theatre or any other building.

To construe this statute as making all persons present in the building, whether occupant or not, guilty of illegal possession of a machine gun, if one were found in the structure, seems to strike down the constitutional safeguards of the 14th Amendment of the Federal Constitution. It might be illustrated by taking a hotel, office building, or other structure with many occupants.

If gangsters brought a machine gun to a hotel room in such a structure, all the occupants of any room in the hotel and all persons present in the hotel are presumptively guilty of illegal possession of this machine gun. The like doctrine would apply to an office building or other large structure having many tenants or occupants.

Indeed, there are large structures in some places in which a part is occupied by a church and the rest by a hotel, office building or for other purposes. If a machine gun is found anywhere in the building, under this construction of the statute, all the attendants at the church service are presumptively guilty of the felony defined by this section of the penal law.

Moreover, there could be no right of selection on the part of the police as to whom they arrested. Under this presumption, all persons in such a structure are guilty of the felony of unlawful possession of the machine gun and it is the duty of the police to arrest them, for public officers, including police officers, must do their duty.

In this case the police apparently exercised a discretion which they did not possess and excused from arrest the occupants of those nine other rooms in this structure, though these other persons were actually occupying the "place" where the machine gun was found, as construed in this case and were all within the presumption of the statute as well as those who were arrested.

The Respondent seems to contend that the statute is constitutional even as construed in this case, on the ground that this relator had some sort of "constructive" access to the place where the machine gun was found, and presumably must be deemed to be occupying such place within the meaning of the statute.

The case is utterly devoid of proof supporting such a contention.

The Attorney General also contends that the statute is constitutional because there is a rational connection between the facts proved (presence of the machine gun)

and the fact presumed (its illegal possession by all persons present).

Various statutory presumptions have been upheld where there is such rational connection. But it will be found that such presumptions are declared to arise from possession, actual or constructive, of the condemned thing.

The presumption arising from the possession of policy slips illustrates the doctrine of permitted presumptions. Section 974 of the Penal Law of New York State provides: "A person who· * * * shall have in his possession, *knowingly,* any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or selected, or to be drawn or selected, or in what is commonly called 'policy', or in the nature of a bet, wager or insurance, upon the drawing or selection, or the drawn or selected numbers of any public or private lottery; or any paper, print, writing, number, device, policy slip, or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly known as 'policy' * * * is a common gambler, and guilty of a misdemeanor."

Section 975 of the Penal Law provides: "The possession, by any person other than a public officer, of any writing * * * or document * * * in what is commonly called 'policy', or in the nature of a bet, wager * * * or article of any kind, such as is commonly used in carrying on, promoting or playing the game commonly called 'policy' is presumptive evidence of possession thereof *knowingly* and in violation of the provisions of section nine hundred and seventy-four."

The constitutionality of this section has been upheld in People ex rel. Wilson v. Flynn, 72 App.Div. 67, 76 N.Y.S. 293; People v. Adams, 176 N.Y. 351, 68 N.E. 636, 63 L.R.A. 406, 98 Am.St.Rep. 675. ·

The offense in 974 is possession knowingly.

The presumption of § 975 is merely that possession is possession knowingly. That is to say possession presumes knowledge of the character of the thing possessed.

Under Section 2414-a of the Penal Law, *possession* of a false weight or measure is presumptive evidence ·of knowledge that it is a false weight or measure.

Under Section 1308 of the Penal Law, the receiver (possessor) of stolen goods is presumed to have knowledge that the goods were stolen.

All these and possibly other like presumptions arise where the thing condemned or stolen is shown to be in the possession of a person. He knows of the existence of the thing because he has it in his possession. The presumption runs only to his knowledge of unlawful character or unlawful possession.

How different is the rationality of relation in such a statute of the thing possessed, to knowledge of the thing possessed, from that in the statute under consideration, as construed here, where, without proof of possession, actual or constructive, of the thing condemned, or of the place where it is found and without proof even of knowledge of the existence of the thing condemned, or its whereabouts, presumption of illegal possession of the thing condemned, comes from occupancy of, or presence in some other part of the same structure where the thing condemned is found.

Surely it shocks the conscience and reason to presume an innocent and lawful occupant of some other part of a building to be guilty of possessing a deadly weapon like a machine gun of which he has never seen or heard of and of which .he knows nothing, to say nothing of such presumption arising from the mere presence of an innocent person in the structure.

If a statute so construed does not violate the 14th Amendment forbidding the States from enacting laws depriving the citizen of his life, liberty or property, without due process of law, then the 14th Amendment is meaningless, and the citizen has no security in his life, liberty and property.

In Manley v. Georgia, 279 U.S. 1, 49 S. Ct. 215, 73 L.Ed. 575, the Court said:

"A mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty and property."

As well enact a statute providing that all persons present in a place or structure where a murder is committed are presumed to have committed the murder.

Section 1897, subd. 1-a, seems to do exactly that thing, as construed here, except that the offense here is not murder but is illegal possession of a machine gun.

In McFarland v. American Sugar Company, 241 U.S. 79, 86, 36 S.Ct. 498, 501, 60 L.Ed. 899, cited by respondent, the

Court said: "It is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime."

Section 1898 of the Penal Law of the State of New York is a similar statute and has been passed on to some extent by the Courts.

Section 1898, provides that: "The possession, by any person other than a public officer [of a pistol] is presumptive evidence of * * * possessing with intent to use the same in violation of this article." (Possession of a pistol is made a crime by Section 1897).

Section 1898-a provides that: "The presence in an automobile * *. * of * * * a pistol * * * shall be presumptive evidence of its illegal possession by all the persons found in such automobile."

This Section 1898-a is very like 1897, subd. 1-a, except that 1898-a is limited to automobiles. Section 1898-a was declared constitutional in People ex rel. Dixon v. Lewis, 160 Misc. 327, 290 N.Y.S. 284, but this was reversed and held unconstitutional by a divided Court in 249 App. Div. 464, 293 N.Y.S. 191.

The case was taken to the Court of Appeals, People ex rel. Dixon v. Lewis, 276 N.Y. 613, 12 N.E.2d 603, but that Court did not pass on the constitutionality of the Section, sustaining the Appellate Division on the ground that the information on which the defendants were held, failed to state a crime.

Another conviction under section 1898-a was affirmed by the Court of Appeals in People v. Shinsky et al., decided in June 1939. No opinion was written, nor was any opinion written in the Appellate Division. The question of the constitutionality of Section 1898-a was raised on the appeal but whether there was sufficient evidence to convict without the presumption of the Statute cannot be ascertained from the decisions of the two Appellate Courts. In any event, that Statute related to persons present in an automobile in which a pistol was also present. The difference between the confined space of an automobile and the four story rooming house here involved under Section 1897, subd. 1-a, is manifest.

If this Court had to decide in the first instance the constitutionality of this penal statute as construed in this case it would unhesitatingly say that the Statute violated the 14th Amendment to the Federal Constitution and was a mere Legislative fiat which made all persons present in the structure, no matter how large, or how many occupants, nor what was the purpose of their presence, nor how lacking they were of any knowledge of the presence of the machine gun, presumptively guilty of a felony for violation of this section of the penal law, if a machine gun were found anywhere in the structure, even locked in a safe in a locked room, as here.

But this Court realizes that all these considerations were presumably passed upon in both of the Appellate Courts of this State, the Appellate Division and the Court of Appeals. In the Appellant's brief in the Court of Appeals the first point was as follows: "It was reversible error for the trial judge to submit the case against the appellant to the jury on the basis of the presumption contained under Section 1897, Subdivision 1(a) of the Penal Law."

Point 2 of the Appellant's brief is as follows: "If the construction of Section 1897, Subdivision 1 (a) of the Penal Law adopted by the Court is correct, then the statute violates the constitutional requirements of due process of law."

At this point the Appellant asserted that the trial Court submitted the case to the jury on the theory that all persons occupying a building where a machine gun was found are presumptively guilty under the statute.

Point 3 is: "It was reversible error to submit the case against the Appellant Murphy (and three others who were not occupants of any part of the structure) on the theory that they were constructive occupants of the house."

In the Appellant Tully's brief, Point 1, the Counsel contended that to convict the defendant on the basis of the presumption such as created by Section 1897, subd. 1-a, deprives the defendants of due process of law.

It thus appears that the contention was made in the Appellate Courts that there was not sufficient proof to warrant conviction of the relator other than the presumption of Section 1897, Subdivision 1-a, of the Penal Law, and that the statute was unconstitutional as applied on the trial.

The District Attorney in his brief argued that the statute was constitutional as construed and applied by the trial court. Both these Appellate Courts affirmed the conviction. True, neither Court wrote any opinion or memorandum of any kind what-

ever. It is also true that one of the Judges of the Court of Appeals dissented from affirmance of the conviction.

In this situation, this Court hesitates to make a decision which in effect would overrule those two great Appellate Courts, in this State.

It seems, therefore, to this Court, that it should send this case, as far as it is able to do so, to the Federal Appellate Courts. It has come to this conclusion despite much concern, lest in so doing it fails to perform its duty in not deciding to discharge the relator or remit him to the State authorities for such proceedings as may be appropriate.

The decision then, is that the writ be dismissed and the relator be remanded to the custody of the Respondent Warden, but this decision is made with the expression of opinion that there exists probable cause for an appeal and this memorandum shall be taken as a certificate of probable cause for the allowance of an Appeal to the Circuit Court of Appeals within the provisions of the Judicial Code, 28 U.S. C.A. § 466. A formal certificate will be made upon request.