**Nick J. SCOTT, Petitioner,**

v.

**DISTRICT ATTORNEY, JEFFERSON PARISH, STATE OF LOUISIANA, Respondent.**

**Misc. No. 1622.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Feb. 4, 1970.

834

Luke Fontana, New Orleans, La., for petitioner.

John Mamoulides, Asst. Dist. Atty. Jefferson Parish, Harry Howard, Asst. Atty. Gen., State of Louisiana, for respondent.

RUBIN, District Judge:

Louisiana's criminal vagrancy statute here comes under the constitutional attack that has felled a number of similar enactments around the country. The woodsman in this case is Nick J. Scott, petitioning for habeas corpus relief from his conviction under La.R.S. 14:107, an ancient tree somewhat debilitated by the extensive jurisprudence on the constitutional flaws of vagrancy laws.

Scott pleaded guilty to a bill of information brought under the Act, charging him with committing the crime of vagrancy "in that he did loiter at New Orleans International Airport at Nation-

al Car Rental without being able to account for his lawful presence therat [sic]." He was sentenced, in the First Parish Court of Jefferson, to 30 days in jail or $60 fine. Thereafter he retained a Legal Services attorney,[1] exhausted his remedies under state law, and filed this petition to annul his conviction.[2]

■ While the present action calls for an *adjudication* of the constitutionality of a state statute, a three-judge court is not necessary, because no injunction was requested.[3]

Section 2281 of the Judicial Code, 28 U.S.C.A. § 2281, declares,

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute * * * shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Relief under a habeas corpus petition resembles injunctive relief to the extent that the writ requires the state officials to cease "enforcing" the statute with regard to the particular petitioner. However, the unambiguous and emphatic language of the statute, the historical distinction between the common law writ of habeas corpus and the equitable decree of injunction, and the pragmatic differences between habeas and injunctive relief all indicate that this is a situation where pharisaic interpretive efforts are both inappropriate and unnecessary. Moreover, unlike an injunction, the writ of habeas corpus does not directly disrupt state law administration.

■■ Because the statute comes before the court on petition for habeas corpus, the examination for constitutional infirmity must be limited to those subsections under which the petitioner was convicted.[4] La.R.S. 14:107 declares,

---

1. No question is raised in this petition concerning the defendant's right to counsel when charged with a misdemeanor; however it should be noted that Scott was without legal assistance when he entered his guilty plea.

2. Scott was in jail when the petition was filed in this court, and had several weeks of his sentence yet to serve. At the hearing, the District Attorney stipulated that he would request the sentencing judge to have Scott released at once so that he could receive medical treatment for a condition that developed while he was in jail.

   The fact that Scott is no longer in custody, and that his sentence has expired, does not remove federal habeas corpus jurisdiction. Title 28 U.S.C.A. § 2243 authorizes the court considering a petition for habeas corpus to "dispose of the matter as law and justice require," and the Supreme Court has held that this includes the power to free a petitioner of any "collateral consequences" of an unconstitutional conviction, though he may no longer be in custody when his petition reaches final adjudication. Carafas v. LaVallee, 1968, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554. While one convicted of a misdemeanor may not suffer the same serious civil disabilities under Louisiana law as a convicted felon, any criminal conviction record carries with it important consequences for the individual's future job opportunities, willingness to testify in court, and possible future sentencing. The United States District Court has the power, on a petition for a writ of habeas corpus filed while petitioner was in custody, to rid him of these lasting damages from an unconstitutional conviction.

3. United States ex rel. Robinson v. York, D.Conn.1968, 281 F.Supp. 8; United States ex rel. Laino v. Warden, S.D. N.Y.1965, 246 F.Supp. 72, affirmed, 2 Cir. 1966, 355 F.2d 208; United States ex rel. Watkins v. Com. of Pa., W.D.Pa. 1963, 214 F.Supp. 913; United States ex rel. Murphy v. Warden, N.D.N.Y. 1939, 29 F.Supp. 486, affirmed, 2 Cir. 1940, United States ex rel. Murphy v. Murphy, 108 F.2d 861, cert. denied, 1940, Murphy v. Warden of Clinton State Prison, 309 U.S. 661, 60 S.Ct. 583, 84 L. Ed. 1009.

4. Although a writ of habeas corpus may be issued after the petitioner is released from detention, in order to secure final adjudication of the constitutionality of his conviction, the writ is still a provision solely for the personal relief of petitioner, concerned only with the constitutional

"The following persons are and shall be guilty of vagrancy;" it then describes nine somewhat unrelated classes of persons considered "vagrants," by virtue either of their behavior or status. The bill of information to which Scott pleaded guilty charges that he "did * * * willfully and unlawfully commit the crime of Vagrancy as defined in R.S. 14:107 in that he did loiter * * * without being able to account for his lawful presence * * *" Although, as counsel points out in his memorandum, petitioner was formally charged with violation of the entire statute, the descriptive comment makes clear that the state sought to punish him under subsections 7 and 8 of the statute, forbidding loitering and failure to give a good account of oneself. Whatever the constitutional vices of the other sections of the Act, and regardless of similarities among their flaws, the accusation against Scott was sufficiently precise to foreclose the habeas corpus court from tracing all the vagaries of the Act.[5] The writ of habeas corpus ad subjiciendum lies to free an individual from the consequences of an illegitimate confinement, and one convicted of loitering does not have standing to question the state's condemnation of gamblers or prostitutes.[6]

This opinion, then, deals only with the constitutionality of those sections of La. R.S. 14:107 that were operative in causing the detention from which Scott petitions:

The following persons are and shall be guilty of vagrancy:

* * * * * *

(7) Persons who loaf the streets habitually or who frequent the streets habitually at late or unusual hours of the night, or who loiter around any public place of assembly, without lawful business or reason to be present; or

(8) Persons found in or near any structure, movable, vessel, or private grounds without being able to account for their lawful presence therein.

## II. VAGUENESS

Criminal statutes that do not clearly define the outlawed conduct may contravene the Fourteenth Amendment guarantee of due process by subjecting the accused to a penalty for behavior that he could not intelligently have known was forbidden. Such vagueness is unconstitutional not only because it fails to warn a person that his behavior may be criminal, but also because it compels enforcement officers, as well, to guess at what violates the law, thus either setting the stage for arbitrary police action or, if police and prosecutors evolve their own rational standards of enforcement, constituting an inappropriate delegation of criminal lawmaking authority.[7]

Such vagueness has been found to be a common failing of laws against loitering and vagrancy,[8] and it is shared

---

acceptability of the causes for his detention. This is one reason why the writ of habeas corpus is less disruptive of state criminal administration than an injunction would be.

5. The entire statute is examined for unconstitutionality in Comment, Louisiana Vagrancy Law—Constitutionally Unsound, 29 La.L.Rev. 361 (1969).

6. Among other things, La.R.S. 14:107 condemns as vagrants "habitual drunkards;" "[p]ersons who * * * habitually associate with prostitutes;" beggars, habitual gamblers; unemployed persons "without lawful means of support;" per-

sons over 21 living off the welfare receipts of others; and prostitutes.

7. The vagueness doctrine was established in a series of Supreme Court cases, including Lanzetta v. New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; Connally v. General Construction Co., 1926, 269 U.S. 385, 46 S.Ct. 126, 70 L. Ed. 322; United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516.

8. Ricks v. District of Columbia, D.C.Cir. 1968, 414 F.2d 1097; Territory of Hawaii v. Anduha, 9 Cir. 1931, 85 F.2d 171; Wheeler v. Goodman, W.D.N.C.1969, 298

by the Louisiana law. Just because a word like "loiter" or "loaf" is pejorative does not mean that it is definitive, nor does the phrase "without lawful business" do more than beg the question of when loitering or loafing can themselves amount to "lawful business." Louisiana considers it an asset to advertise the availability of numerous opportunities for socially acceptable loitering for tourists and vacationers. Their "reason to be present" is considered "lawful," but it is difficult to discern on what rational basis the public can distingush between strolling in the sunlight in Jackson Square and meandering at the International Airport near a car rental agency.

The same lack of precision plagues subsection 8, which classifies as vagrants persons unable "to account for their lawful presence." That provision fails to give any indication of what is "lawful,"

how much of an explanation is needed to add up to an "account," and whose demand for an "account" may be enforced by criminal penalties. Most glaringly, the law contains no useful standards for the policeman or the private citizen to know when an "account" may be demanded.

## III. OVERBREADTH

■■ Unconstitutionally vague statutes are frequently also unconstitutionally overbroad. This flaw is also found in the Louisiana enactment. The Fourteenth Amendment protects individuals from incursions by the state into certain areas of their life, and an overbroad statute is constitutionally defective if it extends state criminal authority beyond the proper reach of government into one of these protected private areas.[9] The

F.Supp. 935 (3-judge court); Lazarus v. Faircloth, S.D.Fla.1969, 301 F.Supp. 266 (3-judge court); Broughton v. Brewer, S.D., N.D.Ala., 1969, 298 F.Supp. 260 3-judge court); Kirkwood v. Ellington, W.D.Tenn.1969, 298 F.Supp. 461 (3-judge court); Goldman v. Knecht, D. Colo.1969, 295 F.Supp. 897 (3-judge court); Smith v. Hill, E.D.N.C.1968, 285 F.Supp. 556; Landry v. Daley, N.D. Ill.1968, 280 F.Supp. 968; Baker v. Bindner, W.D.Ky.1967, 274 F.Supp. 658 (3-judge court); United States v. Margeson, E.D.Pa.1966, 259 F.Supp. 256; Alegata v. Commonwealth, 1967, 353 Mass. 287, 231 N.E.2d 201.

9. See, e. g., Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444; NAACP v. Alabama, 1964, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325; Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377. The doctrine of overbreadth has been used most commonly to fence out state intrusions into the First Amendment area, and is frequently stated as a rule that a proper governmental purpose "may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms," NAACP v. Alabama, 1964, 377 U.S. at 307, 84 S.Ct. at 1314. The "protected freedoms" that the Supreme Court has found to be further insulated by the doctrine of overbreadth have generally been those growing out of specific guarantees, although not actually named

in the Constitution, e. g., freedom of association, NAACP v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; freedom of travel, Aptheker v. Secretary of State, 1964, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992; and academic freedom, Keyishian v. Board of Regents, 1967, 385 U.S. 589, 87 S.Ct. 675, 17 L. Ed.2d 629.

The rationale of these cases clearly applies to personal rights not involving expression, as well. Courts are recognizing and according constitutional dignity to the private citizen's interest in conducting his own personal life. Constitutional protection for this interest may be found in the Fourth Amendment, Camara v. Municipal Court of San Francisco, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; Ninth Amendment, Griswold v. Connecticut, 1965, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (Opinion of Justice Goldberg); First Amendment, Stanley v. Georgia, 1969, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542; Equal Protection Clause, Loving v. Virginia, 1967, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010; Griffin v. Tatum, M.D.Ala.1969, 300 F.Supp. 60; or simply from the Fourteenth Amendment's guarantee of fundamental personal liberty, Thompson v. City of Louisville, 1960, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. In any event, when vagrancy laws trench on this area of private conduct in which society has no legitimate inter-

danger of an overly broad statute is not only that it may deter citizens from engaging in constitutionally privileged activity—the "chilling effect"—but, perhaps more ominously, that it gives enforcement officials the power to select certain citizens, from all of those exercising a particular right, and punish them.[10]

The vagueness that usually accompanies overbreadth, and the fact that by definition the literal reading of an overly broad statute will require it to affect people whom the legislature obviously did not seek to reach, combine to force an unconstitutional degree of discretion on those responsible for deciding when to enforce the law. Many courts have found this situation to exist with regard to vagrancy laws, and the Louisiana provisions here in question are no exception. Courts in Hawaii and Miami have remarked on the irony of punishing "loitering" in a resort community whose economy depends on tourists who are invited to enjoy freedom from the workaday necessity to give a good account of themselves. These remarks are also relevant to Louisiana. In fact, New Orleans prides itself on the sobriquet, "The City That Care Forgot."[11] The overbreadth of the section making all persons accountable to some (unspecified) inquirer

is blatant: the requirement applies to "Persons found in or near any structure, movable, vessel or private grounds," a situation it would be difficult for anyone in a settled community to avoid.

There is no evidence here that Jefferson Parish officials arrested the petitioner for vagrancy simply to harass him, or to punish him for lawful conduct that they found personally offensive.[12] However, the fact that an unconstitutionally overbroad statute may be applied in a precise manner in a particular instance does not cure the overbreadth; the statute itself contains no guide to the use of restraint in its enforcement, and a faulty law cannot be validated by reliance on official good faith in employing it only to protect the public, Aptheker v. Secretary of State, 1964, 378 U.S. 500, 84 S.Ct. 1659.

"It is almost needless to say that such an act cannot be enforced * * * indiscriminately," said the Ninth Circuit in Territory of Hawaii v. Anduha, 9 Cir. 1931, 48 F.2d 171, 173. "It may be enforced against those poor hapless ones who are unable to assert or protect their rights, but as to all others it will remain a dead letter. It may be enforced to suppress one class of idlers in order to make a place more attractive to other idlers of

---

est, they have been stricken as overbroad. See Fenster v. Leary, 1967, 20 N.Y.2d 309, 282 N.Y.S.2d 739, 229 N.E. 2d 426, 25 A.L.R.3d 784, and cases cited *supra*, n. 8.

10. Compare the remark of Mr. Justice Stewart, examining a municipal ordinance against loitering and obstructing traffic, in Shuttlesworth v. City of Birmingham, 1965, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176; "Literally read * * * this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration. * * * Instinct with its ever-present potential for arbitrarily suppressing First Amendment liberties, that kind of law bears the hallmark of a police state." In that case the Court found the ordinance had been sufficiently narrowed by Alabama Supreme Court inter-

pretation to be constitutional; no Louisiana Supreme Court decisions limiting the reach of the vagrancy law have come to this court's attention.

11. Territory of Hawaii v. Anduha, 9 Cir. 1931, 48 F.2d 171; Lazarus v. Faircloth, S.D.Fla.1969, 301 F.Supp. 266. It is easy to imagine the public reaction should the police attempt to arrest all those "loitering" on Bourbon Street in New Orleans.

12. In the same Bill of Information charging him with loitering at the National Car Rental, Scott was also charged with intentionally taking an automobile, "the property of one National Car Rental, without the consent, or by means of fraudulent conduct, practices or representations, but without any intention to deprive the owner of the movable permanently." He pleaded guilty to both counts, without the assistance of a lawyer.

a more desirable class. * * * [T]he act trenches upon the inalienable rights of the citizen to do what he will and when he will, so long as his course of conduct is not inimicable to himself or to the general public of which he is a part."

In sum then, La.R.S. 14:107, §§ (7) and (8), are unconstitutional because they stigmatize as criminal conduct that it is impossible to define concretely [13] or that is so universal as to be beyond the reach of the criminal law under our Constitution.

Because the court finds unconstitutional the Louisiana statutory provisions under which he was convicted, Nick J. Scott's petition for a writ of habeas corpus will be granted.

13. Even a restricted vagrancy statute, designed and used solely to prevent pending threats to public safety from actually developing, might offend the Constitution's protection of fundamental liberties, by being overbroad in a different way. Such a law would really be an effort to punish criminal acts that have not reached the stage of an attempt; penalizing someone who can offer no lawful purpose for his otherwise innocuous activities actually amounts to penalizing him for his intentions alone, and our society may prefer to leave its citizens the privilege of having "guilty thoughts" (if not put into action), rather than to police their minds.