James **LAWRENCE** L.S.P. #66555

v.

C. Murray **HENDERSON**, Warden.

Misc. A. No. 1642.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 13, 1970.

Louis B. Merhige, Baldwin & Merhige, New Orleans, La., for petitioner.

John Volz, Asst. Dist. Atty., Parish of Orleans, State of Louisiana, New Orleans, La., for respondent.

HEEBE, District Judge:

Petitioner James Lawrence brought this writ of habeas corpus to challenge the constitutionality of his conviction for possession of a narcotics outfit. Along with other issues, he contends that the prosecutor coercively used Louisiana's multiple billing procedure to deprive him of his due process right to an effective appeal. For reasons given below, we hold that the petitioner's due process rights as guaranteed by the Fourteenth Amendment were violated, and grant him an out-of-time appeal so he may pursue the other issues he raises in the state courts.

On January 15, 1968, James Lawrence was sitting in a bar between John Mosby and Ella Washington watching a pool game. Two police officers entered the bar and, on the grounds that he fit the description of an armed robbery suspect, frisked him.[1] During the course of the frisk, he was "interviewed" by the officers. Upon learning that he had no money on him and no present employment, the officers arrested him for vagrancy. Washington and Mosby were also arrested for vagrancy, and all three were taken in the same police car to the central lockup.[2] While Lawrence was being booked for vagrancy, the arresting officers left and then returned to the booking desk and claimed that upon searching the car they had found a narcotics outfit under the back seat. One officer testified he had seen Lawrence take the outfit out of his pants and stick it under the back seat. Lawrence was then additionally charged with possession of the narcotics outfit.

Lawrence was convicted of possession of the narcotics outfit and sentenced to twelve years in prison.[3] He decided to appeal and was returned from Angola Prison for a hearing to set the appeal. At this hearing, the prosecutor told petitioner's counsel in his presence that he intended to multiple bill him under Louisiana's habitual offender statute.[4] Petitioner's counsel explained to him that if this bill were filed, he risked having his sentence increased to thirty years. Lawrence then withdrew his appeal. The multiple offender bill was never filed.

Thereafter, Lawrence petitioned for habeas relief in the state courts raising three issues:

(1) That the narcotics outfit introduced at trial should have been excluded as the fruit of an illegal arrest;

(2) That he was denied a fair trial by the discussion in chambers between the trial judge and jury of a narcotics case, and by the trial judge's refusal to allow defendant's counsel to examine the jury as to this discussion.[5]

---

1. While it is not clear that the officers possessed the reasonable suspicion necessary to support the frisk under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), this issue has not been raised below and will not be considered here since it is not germane to the ultimate disposition of the case.

2. Mosby, but not Washington, was also frisked, thus possibly adding credence to her claim that the narcotics outfit carried into the car was hers.

3. No proceedings have ever been instituted against Lawrence on the vagrancy charge.

4. La.Rev.Stat. 15:529.1.

5. Lawrence alleges that after empaneling the jury, the trial judge allowed them into his chambers so they could notify their families of their prospective jury duty. Lawrence and his defense counsel, sitting just outside the judge's chambers, overheard a discussion between the judge and jury concerning a narcotics case. When the judge and jury returned to the courtroom, Lawrence's counsel asked to be allowed to reexamine the jurors on the effects of this conversation. The judge denied this motion and would only allow counsel to ask the entire jury if they still felt they could give Lawrence a fair trial. For reasons given above, we decline here to decide the merits of this question.

(3) That he was deprived of his rights to appeal by the threat of the prosecutor to multiple bill him.

After holding a hearing, the habeas judge, who had been the trial judge, dismissed the writ and the Louisiana Supreme Court affirmed the dismissal. Neither court made any findings of fact or stated any legal reasons.[6] Lawrence then brought this writ attacking his convictions on the three grounds urged in the state proceedings as well as two more which devoloped from Washington's testimony.[7]

(4) That the state knowingly used perjured testimony by the police officer.

(5) That the state denied Lawrence compulsory processes of witnesses.

Pursuant to 28 U.S.C. § 2254, this Court ordered an evidentiary hearing at which the above facts were established. The Court expresses its appreciation to Mr. Louis B. Merhige for his able representation of the petitioner at this hearing.

Based on the facts established, we think that petitioner has raised serious doubts as to the constitutionality of his conviction which merit consideration. Especially impressive, we think, is peti-

tioner's contention that his conviction was based on unconstitutionally seized, and hence inadmissible, evidence.[8] However, since it appears that petitioner improperly lost his appeal, and since we feel that the state courts are primarily responsible for deciding questions of criminal procedure arising in the state courts, we shall not here decide these issues but shall rule only on whether petitioner's right to an effective appeal was denied. We have every reason to believe that the state will fully protect, on appeal, petitioner's rights under the United States Constitution.

■ The narrow question we are asked to decide is whether the threat by the prosecutor to multiple bill petitioner deprived him of any constitutional rights. As such, this is a case of first impression which leads us into as virginal an area of criminal procedure as probably exists—constitutional due process and a defendant's right to appeal.

■ Noting that every state grants a criminal defendant some appellate review, the Supreme Court has acknowledged that "a State is not required by the Federal constitution to provide appellate courts or a right to appellate review at all." Griffin v. Illinois, 351 U.

---

6. See footnote 11.

7. At the state habeas proceeding, Ella Washington testified that the narcotics outfit was hers and that she had stuffed it under the seat. She also testified that she had not received defendant's subpoena in Parish Prison where she was awaiting arraignment. The subpoena was returned "subject does not reside here." As explained elsewhere, we do not here decide the merits of these contentions.

8. Petitioner has raised the illegal seizure problem by a timely motion to suppress and by objection at trial. He argues forcefully that his arrest for vagrancy was unlawful because he was arrested under an unconstitutional statute, Scott v. District Atty. Jefferson Parish, Louisiana, 309 F.Supp. 833 (E.D.La.1970), (holding the Louisiana vagrancy statute, La. Rev.Stat. 14:107, unconstitutional on various grounds) and because no probable cause for that arrest existed even assuming the statute constitutional. Since the

arrest was illegal, the narcotics outfit, obtained as a direct result of the illegal invasion, and thus bearing the poisonous taint of the unlawful arrest, was inadmissible. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Traub v. Connecticut, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed.2d 1048 (1963).

The state contests this issue by claiming that Lawrence abandoned the narcotics outfit in the police car. Consequently, the police did not "seize" the outfit within the meaning of the Fourth Amendment. Abel v. United States, 362 U.S. 217, 80 S.Ct. 1056, 4 L.Ed.2d 1019 (1960). Petitioner, in turn, contends that the narcotics outfit could not have been abandoned within the meaning of that term since its secretion under the seat of a police car could only have been precipitated by the unlawful arrest. Moss v. Cox, 311 F.Supp. 1245 (E.D.Va.1970), and comprehensive discussion of cases therein.

S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), citing McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). The present status of this rule is not at issue here for we are not called upon to grant petitioner a right to appeal. Rather, Louisiana law provides for a statutory appeal of right, La.C.Cr. P. Art. 911 *et seq.*, and appellate review can truthfully be said to be a well-ingrained element of Louisiana's criminal justice system. As has often been noted, until a defendant has exhausted his avenues of appeal, he has not been finally and irrevocably adjudged guilty. *See, e. g.,* Thomas v. United States, 368 F.2d 941 (5th Cir.1966). In correcting the occasional errors that occur in the lower courts, the appellate courts have become indispensable in maintaining that fundamental fairness every American expects from our system of justice.

It can hardly be doubted that where a state provides appellate review, it must comport with the due process and equal protection clauses of the Fourteenth Amendment. As the Supreme Court said in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969):

> "[I]t is now fundamental that, once [avenues of appellate review are] established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. Griffin v. Illinois, 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891]; Douglas v. California, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]; Lane v. Brown, 372 U.S. 477 [83 S.Ct. 768, 9 L.Ed.2d 892]; Draper v. Washington, 372 U.S. 487 [83 S.Ct. 774, 9 L.Ed.2d 899]; Rinaldi v. Yaeger, 384 U.S. 305, 310–311 [86 S.Ct. 1497, 1500–1501, 16 L.Ed.2d 577]." At 724–725, 89 S.Ct. at 2080.

The *Pearce* case recognized that a " 'defendant's exercise of a right to appeal must be free and unfettered. * * * [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice.' Worcester v. Commissioner [1 Cir.] 370 F.2d 713, 718." North Carolina v. Pearce, *supra*, at 724, 89 S.Ct. at 2080. The Court then held a defendant's open access to the appellate courts is unconstitutionally impeded if the appeal procedure is such that the defendant must risk the possibility of an enhanced sentence motivated by the vindictiveness of the trial judge against a defendant who has successfully attacked his first conviction.[9] Such a procedure "chill[s] the exercise of basic constitutional rights" by a criminal defendant by putting a high price on an appeal in violation of due process of law.[10] United States v. Jackson, 390 U.S. 570, 582, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

Here, petitioner attacks a procedure which he alleges threatens him with a greatly enhanced sentence if he even seeks appellate review. A successful attack is not a prerequisite to the enhanced sentence. Hence, the price of this petitioner's appeal—the risk of the increased sentence—is higher than the price in *Pearce* since this petitioner risks an increased sentence even if his attack is unsuccessful while Pearce risked an increased sentence only if he were successful. This procedure appears to be more chilling than that condemned in *Pearce,* and the price it puts on an appeal is clearly unconstitutional usury.

There remains the question of whether the procedure employed by the state in fact violated defendant's right to effective appellate review.[11] The state

---

9. *Pearce* allows the imposition of a higher sentence following a successful attack on a first conviction only if the judge bases the increase "upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." At 726, 89 S.Ct. at 2081.

10. See Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965).

11. In oral argument, the assistant district attorney contended that we were bound in

234

claims that petitioner waived his right to review when he withdrew his appeal. The classic definition of waiver first announced in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), requires "an intentional relinquishment or abandonment of a known right or privilege."

The evidence here showed that after sentencing petitioner requested an appeal. At a hearing on this appeal, the prosecutor informed petitioner's counsel in his presence that he intended to multiple bill him. Counsel informed petitioner that if a multiple bill were filed against him, he risked having his twelve year sentence increased to thirty years. Rather than gamble on an additional eighteen years, petitioner withdrew his appeal. The prosecutor never filed the multiple bill. Both petitioner and his counsel, who is presently an assistant district attorney, testified that no other reason for not appealing existed. Accordingly, this Court must find that petitioner did not wish to intentionally relinquish his right to appellate review but was coerced into doing so by the prosecutor's threatened multiple billing.[12] This coercion violated petitioner's due process right to an effective appeal.

It is therefore ordered that petitioner be granted an out-of-time appeal to the Louisiana Supreme Court and there be accorded, with aid of counsel to be appointed by the state court, full review of all the issues he raises surrounding his conviction. In default thereof, the judgment of conviction shall be set aside, and petitioner shall be discharged from custody.

such determinations of fact by the findings of the state courts. While we would be most happy to accord such findings the weight due them under 28 U.S.C. § 2254, we must point out that this is just another instance of a habeas petition reaching this court with the record wholly devoid of any findings or reasons to support the state's decisions. This unhappily forces us to hold de novo evidentiary hearings on all issues of fact, which leads to needless duplication of effort by us and further

aggravates this rather tender area of federal-state relations. See Beal v. Henderson, 317 F.Supp. 1323 (W.D.La.1970).

12. We stress that this opinion is not meant to reflect on the constitutionality of the habitual offender statute itself. We are not passing on the legitimate reasons a state may have for enacting such legislation. We merely suggest that its use be confined to that envisaged by the legislature and not to deprive individuals of constitutional rights.