255 So.2d 729

**STATE of Louisiana**

**v.**

**James LAWRENCE.**

**No. 51295.**

Dec. 13, 1971.

Louis B. Merhige, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

BARHAM, Justice.

This is an appeal from a conviction for possession of an opium derivative and the 12-year sentence imposed. [1]

*Bill of Exceptions No. 1.*

■ This bill was reserved to the overruling, after a hearing, of defendant's pretrial *oral* motion to suppress. The only evidence sought to be suppressed in that hearing was a pair of trousers which were not associated with the crime for which he was tried and which were not offered in evidence in this trial. This bill has no merit since it concerns evidence not pertinent to the defendant's trial. We need not consider whether a motion to suppress can be made orally. See State v. Royal, 255 La. 617, 232 So.2d 292 (1970).

*Bill of Exceptions No. 4.*

This bill was taken when the State offered in evidence two hypodermic needles, an eyedropper, and a brown paper bag which a police officer testified the defendant had attempted to conceal in the police car while under arrest.

A brief statement of the circumstances of the defendant's arrest is necessary for an understanding of the arguments made by both the State and the defense. Two officers making a routine check at a bar saw the defendant seated with two companions, a man and a woman. The companions hurriedly moved to another part of the bar, and the defendant remained seated, crouched or bent over with his hands across his stomach. The defendant's general appearance and clothing matched a description received by the officers of a man who was wanted for armed robbery. They approached the defendant and in conversation with him learned that he had no money with him and did not work, and they then placed him under arrest for vagrancy. The officers frisked the defendant for weapons, and during the "patting down" a pair of new trousers with untailored cuffs and a department store label and price tag still attached fell out from under his coat. The officers then placed the defendant's companions under arrest for vagrancy, and drove all three to headquarters in the police car. While in the automobile one of the officers saw the defendant remove from around his waist a brown paper package which he stuffed under the back seat. After the three were booked, the officer found under the seat of the car a brown bag which contained an eyedropper and two hypodermic needles—apparently part of a narcotics "outfit". The examination of the residue in the eyedropper determined that it contained heroin.

1. The defendant, who failed to appeal timely, urged in a post-conviction writ application that he was denied the right to an appeal. This is therefore an out-of-time appeal granted in response to that application.

The defendant contends under this bill that the evidence to which he objected was the fruit of an unconstitutional search and seizure. It is argued that the arrest for vagrancy was an illegal arrest because it was made in reliance upon an unconstitutional penal provision;[2] that since the arrest was illegal, any search and any seizure resulting from the arrest were illegal. This would be a serious argument if we were to reach the constitutional issue and determine the statute under which the defendant was arrested to be null and of no effect because of its unconstitutionality.

The State has urged that we should not reach the constitutional issue. It argues that regardless of whether the arrest for vagrancy was a legal arrest, the officers had a right to stop and frisk the defendant under Code of Criminal Procedure Article 215.1 because of their prior knowledge of a description which possibly linked the defendant to a robbery. The State reasons that the right to stop and frisk existed before and after the arrest and without regard to the validity of the arrest; that the officers' patting down or frisking of the defendant was the exercise of that statutory right; that as a result when the pants fell from under the defendant's coat, there then existed additional grounds for arrest or detention; that the evidence resulting from the legal frisking established probable cause for arrest and created a situation in which the abandoned narcotics paraphernalia could be seized. The State reasons that we are therefore required to pretermit the question whether the arrest for vagrancy was a legal arrest since the circumstances in their totality show a constitutional seizure.

Again, this is an argument of serious import. For another reason, however, we have determined that we do not reach the question of whether R.S. 14:107(5) is constitutional.

The defendant here made only one motion to suppress, an oral motion, which sought only to suppress evidence having no connection with this offense. This motion therefore in no respect addressed itself to the narcotics evidence to which the defendant objected when it was proffered at the trial. He did not move to suppress the narcotics paraphernalia; he simply objected, after predicate and foundation had been laid, to the admissibility of these articles as evidence at his trial before the jury. The defendant's objection under these circumstances came too late to raise the issue of an unconstitutional search and seizure.

---

2. The defendant was arrested under R.S. 14:107, which reads:
"The following persons are and shall be guilty of vagrancy:
" * * *

"(5) Able-bodied persons without lawful means of support who do not seek employment and take employment when it is available to them; * * *
" * * *."

Code of Criminal Procedure Article 703 (A) provides: "A defendant aggrieved by an unconstitutional search or seizure may move to suppress for use as evidence at the trial on the merits, any tangible objects or other property, or documents, books, papers or other writings, on the ground that they were so obtained. A motion filed under the provisions of this paragraph must be filed no later than three judicial days before the trial on the merits begins, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. The court in its discretion may permit the filing of such a motion to suppress at any time before or during the trial."

The comment under that article gives Federal Rule 41(e) as a source and notes that the federal rule also limits the time for filing the motion to suppress. The comment continues: "As interpreted by the federal courts, if the motion is not timely filed, the taint of unlawfulness is waived and the attack may not be made later during the trial by an objection to admissibility."

Federal courts have determined that objection to evidence as being the fruit of unconstitutional search and seizure must be raised by a motion to suppress, and that simple objection at the trial before the jury comes too late. United States v. Bennett, 409 F.2d 888 (2nd Cir. 1969), cert. de-

nied, Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101; Mesmer v. United States, 405 F.2d 316 (10th Cir. 1969); United States v. Maloney, 402 F.2d 448 (1st Cir. 1968), cert. denied 394 U.S. 947, 89 S.Ct. 1283, 22 L.Ed.2d 481; Small v. United States, 396 F.2d 764 (5th Cir. 1968); Browning v. Crouse, 327 F.2d 529 (10th Cir. 1964); United States v. Milanvich, 303 F.2d 626 (4th Cir. 1962), cert. denied 371 U.S. 876, 83 S.Ct. 145, 9 L.Ed. 2d 115.

Pertinent also are two of our own cases, State v. Rasheed, 248 La. 309, 178 So.2d 261, and State v. Davidson, 248 La. 161, 177 So.2d 273, decided before the adoption of our present Code of Criminal Procedure in response to the United States Supreme Court decisions in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, and following cases. In Rasheed and Davidson we held that this state would apply the federal rule that a defendant could test the constitutionality of a search and seizure only under a motion to suppress addressed to the judge alone, and that failure to raise the issue in this manner operated as a waiver of any claim that defendant's constitutional rights were violated. The jurisprudence of Rasheed and Davidson, which adopted and applied Federal Rule 41(e) to state prosecutions, was enacted into law in our present Code of Criminal Procedure. The reasons for such a rule are to eliminate from the trial before the jury all dis-

putes over police conduct unrelated to the guilt or innocence of the accused; to avoid unwarranted delay of the trial and confusion of the jury; to spare the State as well as the defense the expense of a useless trial in cases where a purely legal determination by the judge alone is required; to avoid the necessity of declaring a mistrial because the jury has been exposed to unconstitutional evidence, with resulting repetitive litigation; and to afford the State and the accused advance knowledge of the rules of evidence which must be followed during the course of the trial.

■ The question of the unconstitutionality of a search and seizure and the admissibility of evidence seized thereunder is a legal question which should be heard by the judge alone out of the presence of the jury. Since this defendant failed to file his motion to suppress as required by our Code of Criminal Procedure Article 703(A), he could not make his attack upon the admissibility of the evidence by simple objection at the trial. Having determined that the defendant waived his right to test the constitutionality of the evidence upon the ground that it was the fruit of an unconstitutional search and seizure, we pretermit a discussion of all other issues raised by the defense and the State concerning the admissibility of this evidence.

### Bills of Exceptions Nos. 2, 3, and 6.

■ These three bills were reserved on similar or related grounds. It is stated expressly in brief that Bill No. 2 is withdrawn. Bills Nos. 3 and 6 were neither briefed nor argued and are therefore considered abandoned.

### Bill of Exceptions No. 5.

■ On direct examination by defense counsel, one of the police officers who were present when the defendant was arrested and searched was asked: "Is it part of the usual search to frisk around the waistband?" The State objected to this question, the trial judge sustained the objection, and Bill No. 5 was reserved. Defendant argues that this testimony was necessary to show that a "usual search" includes a patting down around the waist, which would indicate that defendant, if searched in this manner, did not have the narcotics paraphernalia hidden under his waistband as the arresting officer testified.

Such general questions concerning police procedure are often pertinent in determining the propriety of the particular technique used in a certain instance. The trial court should not unduly restrict questioning on material and relevant issues. However, in this case full opportunity was given to the defendant to question both of the officers about the particular searches of the defendant and his male companion.

There was no prejudice, therefore, in the judge's refusal to allow this general question to be answered.

## Bill of Exceptions No. 7.

During the trial the defendant called as a witness James Mosby, Jr., who had been arrested with him and taken to police lock-up in the same car. Mosby testified that he and the defendant had been searched by the police officers and then placed in the rear of the police car, and that he did not observe the defendant at any time put anything behind the seat of the car. On cross-examination the State attempted to discredit his testimony by showing that Mosby was presently confined to parish prison along with the defendant, that the two of them had been sitting together in the courtroom before the trial, and that Mosby had a prior criminal record. On redirect examination defense counsel, in an attempt to show there had been no opportunity for the witness and the defendant to discuss the witness's testimony, brought out that they were on separate levels in the prison, and that they were together in the courtroom because the prison officials had put them together. After eliciting this information, defense counsel asked the witness whether he was in custody in parish prison and whether he had to follow orders, and the witness answered yes to both questions. The State objected, the objection was sustained, and the two questions and their answers were stricken. To this action by the trial judge the defendant reserved Bills of Exceptions No. 7.

The defendant argues that he should have been allowed to controvert this prejudicial evidence, which implied that the defendant had had the opportunity to, and actually did, suborn perjurious testimony from Mosby. The examination by defense counsel of this witness reveals, however, that an opportunity to attack the evidence brought out on cross-examination by the State was given to defendant. He admits that he was allowed to show that the witness was on a different tier in the prison. From the record it appears, additionally, that the witness answered in the negative when asked whether he had a choice of where he could go while in prison and whether the defendant had asked him to lie for him. Whether to believe the testimony of the witness or to believe that he had lied either as a favor to the defendant or out of fear of him is a matter which addresses itself to the jury. The defendant was allowed ample opportunity to present the complete circumstances for the jury to weigh in making its determination of the witness's credibility. There is no merit in this bill.

## Non-unanimous Verdict.

The defendant urges that there is also an error patent on the face of the

record entitling him to a reversal. C.Cr.P. Art. 920(2). He notes that the minutes show on the polling of the jury that the vote was 10 for conviction and two against. It is defendant's position that a less than unanimous verdict denies him equal protection of the laws and permits conviction without the constitutionally required reasonable doubt standard of proof. Attacks on less than unanimous verdicts have been numerous in the recent jurisprudence, and this court has consistently rejected them. For the most recent discussion, see State v. Jackson, No. 51113 on our docket, decided November 8, 1971, 259 La. 957, 254 So.2d 259, and the cases cited there. This argument is without merit.

## Assignments of Error.

Three additional arguments were presented on behalf of the defendant under the headings of his fifth, sixth, and seventh assignments of error. Defendant recognizes that these issues are not presented by way of bills of exceptions or errors patent on the face of the record, which is the ordinary procedure for review of errors allegedly committed by the trial court. But he argues that since the out-of-time appeal was for a "full review of all issues he raises surrounding his conviction", out of an abundance of caution he is also urging the issues raised in the writ of habeas corpus.

■ The scope of our appellate review is expressly provided and limited by Article 920 of the Code of Criminal Procedure. It states: "The following matters *and no others shall be considered on appeal*: (1) Formal bills of exceptions * * * and (2) Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." (Emphasis supplied.) This court is without right or authority to extend its appellate review beyond that provision. These three issues cannot be considered on appeal, but address themselves to relief by way of writs if the defendant feels that he has not received a fair trial and has been denied due process of law. C.Cr.P. Art. 362(9).

The conviction and sentence are affirmed.

DIXON, J., takes no part.