James **LAWRENCE** L. S. P. #66555

v.

C. Murray **HENDERSON**, Warden.

Misc. A. No. 1642.

United States District Court,
E. D. Louisiana.

July 3, 1972.

See also, D.C., 318 F.Supp. 230.

Louis B. Merhige, Baldwin & Merhige, New Orleans, La., for petitioner.

John Volz, Louise Korns, Maurice R. Franks, Asst. Dist. Attys., Parish of Orleans, State of Louisiana, New Orleans, La., for respondent.

HEEBE, Chief Judge:

Petitioner James Lawrence brought a writ of habeas corpus to challenge the constitutionality of his conviction for possession of a narcotics outfit. After a full evidentiary hearing, the Court granted petitioner an out-of-time appeal so that the state appellate court could consider the constitutional issues. Lawrence v. Henderson, 318 F.Supp. 230 (E.D.La.1970). After the Louisiana Supreme Court affirmed petitioner's conviction, State v. Lawrence, 260 La. 169, 255 So.2d 729 (1971), petitioner reurged his federal habeas claim and moved to show cause why he should not be released. Arguments were heard by this Court on March 1, 1972.

The Court, having evaluated the arguments of counsel and having studied the legal memoranda submitted by the parties, is now fully advised in the premises and ready to rule. For the reasons set forth below, we conclude that petitioner is held in custody in violation of his Fourth, Sixth and Fourteenth Amendment rights.

Five main issues which were raised in Lawrence's federal habeas petition but not resolved in our earlier decision form the basis of our opinion:

1. Was petitioner's arrest violative of the Fourth and Fourteenth Amendments?

2. Should the narcotic paraphernalia seized from him have been excluded at the trial as the fruit of an unlawful arrest?

3. Was he denied compulsory service of process for obtaining a witness in his favor in violation of the Sixth and Fourteenth Amendments?

4. Did the state knowingly use a police officer's perjured testimony? [1]

5. Did the trial judge discuss another narcotics case with the jury so as to deprive Lawrence of his Sixth Amendment right to an impartial jury? [2]

Since we have based our decision on the first three issues, we have not found it necessary to reach the fourth and fifth contentions.

At the evidentiary hearing before this Court, a picture emerged of a man's arrest on the slimmest of charges—vagrancy—and his eventual sentencing to twelve years of imprisonment for possessing narcotics and narcotic paraphernalia (i. e., a .25 gauge hypodermic needle, a disposable hypodermic needle and an eye dropper). The details of this picture bear repetition here. [3]

On January 15, 1968, James Lawrence, John Mosby, and Ella Washington were seated in Porter's, a combination bar and

---

1. Petitioner alleges that the officer who testified at the trial that he saw Lawrence place the narcotics paraphernalia behind the seat of the police car deliberately lied. He claims that the officer knew that Ella Washington who was arrested at the same time as the petitioner had placed the items behind the seat. This claim is corroborated by Miss Washington's testimony in the state habeas proceeding because she stated that she owned the items and had attempted to hide them.

2. Lawrence alleges that after empaneling the jury, the trial judge called a recess and allowed the jury to use the telephone in his chambers in order to notify their families of their jury duty. Lawrence and his defense counsel, who were just outside of the chambers, allegedly overheard a discussion between the judge and jury concerning another narcotics case. When court resumed, Lawrence's attorney requested permission to re-examine the jurors on the effects of this conversation. The request was denied but counsel was allowed to ask the entire jury if they still felt that they could give Lawrence a fair trial.

3. The facts of this case were previously set forth in Lawrence v. Henderson, 318 F.Supp. 230 (E.D.La.1970).

pool room, at 2135 Washington Avenue in New Orleans watching a game of pool. Two policemen entered and frisked Lawrence on the grounds that he fit the description of an armed robbery suspect.[4] No contraband or weapons were found on Lawrence's person.[5] During the frisk, he was questioned by the officers who, upon learning that he was unemployed and had no money, arrested him for vagrancy.[6] Washington and Mosby were arrested on the same charge, and the three were placed in a police car for transportation to Central Lockup. Because no police matron was present at the time of arrest, Miss Washington was not searched before entering the vehicle although Mosby was.

At Central Lockup Lawrence, Mosby and Washington were then booked for vagrancy. Either during or after the booking procedure one of the arresting officers searched the police car and found a narcotics "outfit" under the back seat. Since he claimed that he had seen Lawrence take the paraphernalia out of his pants and place it under the seat while the three "vagrants" were in the police car, Lawrence was additionally charged with possession of narcotics.

He pled not guilty to the possession charge. After a jury trial Lawrence was convicted of possessing narcotics and was sentenced on April 8, 1968, to twelve years at hard labor. At the trial the only evidence which bore directly on the possession of heroin was testimony by John Koch, Director of the New Orleans Police Department's Crime Lab, that the eye dropper which Lawrence allegedly left in the police car contained a residue of the drug.

The state courts have refused to find merit in any of the petitioner's constitutional claims. We respectfully disagree.

### I.

■ Since there was no probable cause for petitioner's warrantless arrest for vagrancy, his arrest was unlawful under the Fourth Amendment as made applicable to the states through the Fourteenth. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ The general rule is that the validity of a warrantless arrest is to be determined by state law so long as that law comports with constitutional standards.[7]

4. At the trial, Edward Eves, one of the officers who arrested petitioner, testified as follows to the events leading up to Lawrence's arrest:

"We were making a routine bar check, Porter's, 2135 Washington Avenue, on the 15th of January. We entered the barroom. We observed a colored female, two colored males seated on a bench in the rear of the barroom. After we entered, the colored female hurriedly walked to the bar. Another colored male was sitting, got up and walked and stood by the door. James Lawrence remained seated. He was kind of hunched over. At this time we noticed that he fit the description of a suspect." Record, p. 23.

5. As a result of the frisk in the bar, a new pair of trousers was found under Lawrence's coat but no charges were brought in connection with the pants.

6. Louisiana's vagrancy statute, which is set forth in LSA–R.S. 14:107, reads in part as follows:

"The following persons are and shall be guilty of vagrancy:

(1) Habitual drunkards; . . .

(5) Able-bodied persons without visible lawful means of support who do not seek employment; . . .

(7) Persons who frequent the street habitually at late or unusual hours of the night, or who loiter around any public places of assembly without visible or lawful business; or

(8) Persons who are found in or near any structure, movable, vessel, or private grounds, without being able to account for their presence therein; . . .

Whoever commits the crimes of vagrancy shall be fined not more than one hundred dollars, or imprisoned for not more than six months, or both."

7. See, Johnson, supra, 333 U.S. at 15, 68 S.Ct. 367; United States v. DiRe, 332 U.S. 581, 589–592, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Although these three cases dealt with the applicability of state law to the lawfulness of a warrantless arrest

The Supreme Court has specified that an arrest without a warrant does not violate the Fourth Amendment if it is "for a crime committed in the presence of the arresting officer or for a felony of which he had reasonable cause to believe defendant guilty." Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948). *See also,* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (Douglas, J., dissenting opinion). Although there is some ambiguity, we do not believe that this is the law in Louisiana. In this state an officer probably can arrest someone for committing a misdemeanor out of his presence if he has reasonable cause to believe the person is guilty of the crime as Article 213(3)[8] of the Louisiana Code of Criminal Procedure provides for a warrantless arrest if a "peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer." Although the "Official Revision Comment" specifies that the term "offense" in Subsection (3) broadens the police officer's authority to make arrests for crimes committed out of his presence to include arrests for misdemeanors as well as felonies,[9] the leading state supreme court case on warrantless arrests militates against this interpretation. Pearson v. Great Southern Lumber Co., 134 La. 117, 63 So. 759 (1913). Even though the *Pearson* decision preceded the enactment of the current Article 213, it was not based on any then existing statute but rather on general principles of criminal law. As the court said in *Pearson:*

> "Every one knows or should know that no arrest for a misdemeanor committed outside of the presence of the one complaining should be made without a warrant based on proper affidavit. Bigelow on Torts (7th Ed.) p. 220, § 442; Clark on Criminal Procedure, pp. 22, 27, 34, citing State v. Bryant, 65 N.C. 327; State v. Shelton, 79 N.C. 605 (at 760)."

Here it does not matter whether we apply the standard for a warrantless arrest which the Supreme Court approved of in *Johnson* or the more relaxed standard in Article 213 of the Louisiana Code of Criminal Procedure because Lawrence's arrest is invalid under either test.

There is no evidence that Lawrence committed the crime of vagrancy in the arresting officers' presence, for while the police questioned him he was neither habitually drunk,[10] unemployed and not seeking employment,[11] loitering around a

---

for a *federal offense* so long as the state law was not violative of the Federal Constitution, the instant suit presents an *a fortiori* situation because Lawrence was arrested for a state, not a federal, crime. Rodriguez v. Hanchey, 359 F.2d 724, 726 (5th Cir. 1966), cert. den. 385 U.S. 884, 87 S.Ct. 179, 17 L.Ed.2d 112 (1966); Johnson v. Middlebrooks, 383 F.2d 386, 387 (5th Cir. 1967).

8. "Art. 213. Arrest by officer without warrant; when lawful

A peace officer may, without a warrant, arrest a person when:

(1) The person to be arrested has committed an offense in his presence, and if the arrest is for a misdemeanor it must be made immediately or on close pursuit;

(2) The person to be arrested has committed a felony, although not in the presence of the officer;

(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer; or

(4) The peace officer has received positive and reliable information that another peace officer holds a warrant for the arrest."

9. *See,* Roberts v. American Employers Ins. Co., 221 So.2d 550, 553, fn. 2 (La.App. 3rd Cir. 1969).

10. LSA–R.S. 14:107(1).

11. LSA–R.S. § 107(5) which was in effect at the time of petitioner's arrest defines vagrants as "Able-bodied persons without visible lawful means of support who do not seek employment." Effective July 20, 1968, subsection (5) was amended to read: "Able-bodied persons without lawful means of support who do not seek employment and take employment when it is available to them." Although the state claims that petitioner was charged with violating subsection (5), (Opposition by State of Louisiana to Granting Writ

public place without lawful or visible means of support [12] or in a structure without being able to explain his whereabouts.[13]

■ Similarly, Lawrence's arrest cannot be upheld on the grounds that the officers had reasonable cause to suspect him of having committed a felony because vagrancy is not a felony in Louisiana.[14] It is immaterial that the crime for which Lawrence was convicted—possession of narcotics—was a felony.

■ Furthermore, there was no reasonable cause to believe that the misdemeanor of vagrancy had been committed by Lawrence out of the police officers' presence. There was no reasonable or probable cause [15] to arrest petitioner until the narcotic "outfit" was found but at that time he was already under arrest and in the process of being booked for vagrancy. An illegal arrest cannot be legalized by what is discovered after the arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. DiRe, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

■ A warrantless arrest should only be made in limited circumstances for, as Justice Stewart cautioned in Beck v. United States, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964):

"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." [16]

In Beck, the Supreme Court held that the defendant's arrest and the incident search and seizure was invalid under the Fourth and Fourteenth Amendments since he was arrested without probable cause. Police officers who had received unspecified information about Beck arrested him and searched the car in which he was driving. After escorting him to a nearby police station, the officers searched him and found an envelope with several clearing house slips "beneath the sock of his leg" and charged him with possession of these slips in violation of an Ohio criminal statute.

■ The facts concerning Lawrence's arrest are barely distinguishable from those in Beck. Like the Supreme Court in that case, we can only say that "[w]hen the constitutional validity of an arrest is challenged, it is the function of

of Habeas Corpus, 3), the record leaves doubt as to which subsection of § 107 he was charged with violating. Subsection (5) is only partially satisfied because the police only knew that Lawrence was unemployed but did not know whether or not he had sought employment. Lawrence cannot be held criminally liable for his unemployed status. Compare, Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) and Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

12. LSA–R.S. 14:107(7). This subsection was invalidated in Scott v. District Attorney, Jefferson Parish, 309 F.Supp. 833 (E.D.La.1970), aff'd per curiam 437 F.2d 500 (5th Cir. 1971).

13. LSA–R.S. 14:107(8). This subsection was invalidated in Scott, supra.

14. A felony is defined in both Article 933 of the Code of Criminal Procedure and LSA–R.S. 14:2 to mean any offense which is either punishable by death or by imprisonment at hard labor. At the time Lawrence was arrested, LSA–R.S. 14:107(9) provided "Whoever commits the crimes of vagrancy shall be fined not more than one hundred dollars, or imprisoned for not more than six months, or both."

15. In interpreting the meaning of "reasonable cause" in Louisiana Revised Statutes 15:60, now Code of Criminal Procedure Art. 213, reasonable cause has been equated with probable cause. Johnson v. Middlebrooks, 383 F.2d 386, 387 (5th Cir. 1967).

16. See also, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), where the Court discusses the constitutionality of a warrantless search which had been made pursuant to the New York "stop and frisk" law: ". . . . a search incident to a lawful arrest may not precede the arrest and serve as part of its justification." At 67, 88 S.Ct. at 1905.

a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543]," (*Beck, supra,* at 96, 85 S.Ct. at 228). In the case at hand we cannot say that at the moment of Lawrence's arrest the officers were in possession of facts which would "warrant a man of reasonable caution" to believe that an offense had been committed.[17]

In addition petitioner contends that his arrest was also unlawful because the vagrancy statute under which he was arrested is unconstitutional. Although the petition is unclear as to the basis of this argument, it is apparently grounded on the alleged vagueness and overbreadth of the statute. Statutes similar to the Louisiana vagrancy statute have been invalidated in other states on these grounds. Territory of Hawaii v. Anduha, 48 F.2d 171 (9th Cir. 1931); Lazarus v. Faircloth, 301 F.Supp. 266 (S.D.Fla., 3-judge court, 1969); Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 414 F.2d 1097 (1968).[18] Also, in Scott v. District Attorney, Jefferson Parish, 309 F.Supp. 833 (E.D.La.1970), aff'd per curiam 437 F.2d 500 (5th Cir. 1971), Judge Alvin Rubin invalidated subsections (7) and (8) of the Louisiana vagrancy statute.

Since Lawrence, unlike the alleged "vagrants" in these other cases, was arrested but not tried for vagrancy, the constitutionality of LSA–R.S. 14:107 is not squarely before us, and we refrain from expressing an opinion on this issue.

## II.

Viewing the narcotics apparatus as the fruit of an unlawful arrest, we conclude that it should not have been admitted in evidence against petitioner. As the Supreme Court reiterated in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963):

"The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." (At 485, 83 S.Ct. at 416)

The necessary nexus between the illegal arrest and the exclusion of evidence exists unless the police learned of the evidence "from an independent source," Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920), or the arrest and the challenged evidence has "become so attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939); Wong Sun, supra, 371 U.S. at 487, 83 S.Ct. 407.

Neither exception is applicable here, and the introduction of the narcotic apparatus at trial was nothing more than the use of "knowledge gained by the Government's own wrong," [19] which was exactly what Justice Holmes held could not be done in *Silverthorne*.

---

17. We refrain from considering the reasonableness of the suspicions which led the officers to initially frisk and question Lawrence in the poolroom, for there is scant information as to what—an informer's tip, a police bulletin, suspicious behavior or whatever—caused the policemen to conclude that Lawrence fit the description of an armed robbery suspect. The dual determination as to "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place", Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), cannot, therefore, be made. Suffice it to say that the reasonableness of the officers' "stopping and frisking" Lawrence is at least questionable under the standards set forth in *Terry* and its companion case, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), which focused on New York's "stop and frisk" statute.

18. See, Scott v. District Attorney, Jefferson Parish, 309 .F.Supp. 833 (E.D.La. 1970), fn. 8, for a more extensive listing of cases which have held state vagrancy statutes to be unconstitutionally vague.

19. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920).

Any evidence which is impelled by the unlawful arrest is subject to the primary taint of illegality and should be excluded as the fruit of a poisonous tree. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). In *Harrison* the Court held that the petitioner's initial trial testimony was the inadmissible fruit of illegally procured confessions and that, therefore, the reading of the testimony at a new trial should have been excluded. Justice Stewart who wrote the majority opinion in *Harrison* implied that *Wong Sun* supported the conclusion that the trial testimony was impelled by the illegal confessions because it appeared "that, but for the use of his confessions, the petitioner might not have testified at all." (At 225, 88 S.Ct. at 2012).[20]

Assuming Lawrence rather than Miss Washington left the narcotics apparatus in the back seat of the police car, we conclude that he would not have left it there "but for" his unlawful arrest. In fact, the circumstances of his illegal arrest for vagrancy impelled Lawrence to leave the apparatus in the car [21] because he probably knew that if it were found in his possession at the police station, he would be charged with a much more serious crime than vagrancy.

We reject the state's contention that since Lawrence abandoned the eye dropper and needles, these items could not be excluded in light of Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). This case is distinguishable from *Abel* on several grounds. Leaving incriminating narcotics paraphernalia in a police car prior to being booked on a vagrancy charge which emanated from an unlawful arrest is quite different than Abel's leaving evidence of espionage in the waste paper basket of his hotel room "after [he] had paid his bill and vacated the room" (*Abel, supra,* at 241, 80 S.Ct. at 698). Whereas Abel abandoned the items voluntarily after he was given the opportunity to pack his suitcases and take whatever he wanted with him, Lawrence was impelled to divest himself of the items because of the illegality of his arrest.

### III.

At the state habeas proceeding, Ella Washington testified that she had not received the subpoena to testify at petitioner's trial. Although the subpoena was sent to her at Parish Prison where she was awaiting arraignment, it was returned with the notation "Subject Does Not Reside Here." She explained that she did not voluntarily offer herself as a witness in defendant's behalf because her testimony would have incriminated her since she would have stated that the narcotic apparatus belonged to her and that she placed it under the seat.

From these facts we can only conclude that petitioner was denied the right to compulsory process for obtaining witnesses in his behalf, a right which he is guaranteed under the Sixth Amendment and which is made applicable to the states through the Fourteenth Amendment. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Louisiana law also guarantees this right to petitioner. La.Const. Art. 1, § 9; C. of Crim.P., Art. 731.

20. State v. Traub, 151 Conn. 246, 196 A.2d 755 (1963), cert. den. 377 U.S. 960, 84 S.Ct. 1637, 12 L.Ed.2d 503 (1964), rejected the "but for" test when an illegal arrest led to a confession. The Connecticut Supreme Court concluded that *Wong Sun* only excluded a confession as a tainted fruit if the illegal arrest caused or brought about the confession. An earlier *Traub* decision, 150 Conn. 169, 187 A. 2d 230 (1962), held that a confession was admissible despite an illegal arrest and an illegal period of detention. The Supreme Court granted certiorari, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed.2d 1048 (1963), and remanded the case for further consideration in light of Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and *Wong Sun.* The result was the opinion at 151 Conn. 246, 196 A.2d 755.

21. Again assuming it was Lawrence who placed the apparatus behind the seat.

The record is barren as to the reasons for the denial of compulsory process. Petitioner may have had it denied him through inadvertence or other innocent reasons. The cause of the denial, however, is immaterial. It is the resulting inability to compel Miss Washington to testify which is unconstitutional. We see no difference between being denied compulsory process because of error and because of a state statute as in *Washington*.

The right to compulsory process is "fundamental and essential to a fair trial," *Washington, supra*, at 17, 87 S.Ct. at 1922; and it is a necessary correlative of due process of law:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington, supra*, at 19, 87 S.Ct. at 1923.

Although every constitutional error at trial is not automatically reversible error, the inability to serve Miss Washington was not harmless error but rather an error, defect, irregularity or variance which affected substantial rights and which, under Rule 52(a), F.R. Crim.P., could not be disregarded. As the Supreme Court held in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Since a reasonable jury would have had to acquit Lawrence if they had believed Miss Washington, we cannot say that the denial of compulsory service of process here was harmless error beyond a reasonable doubt. *See generally*, Harmless Constitutional Error: A Reappraisal, 83 Harv.L.Rev. 814 (1970).

## IV.

All that remains are the state's five arguments against granting the habeas petition which it advanced in response to Lawrence's motion to show cause why he should not be released. They are:

1. On June 6, 1971, the suit was dismissed by this Court.

2. Petitioner failed to comply with the provisions of 28 U.S.C. § 2242 because he failed to alleged in the body of his petition the name of the person who had custody over him.

3. Petitioner cannot be heard to complain of the incompetence of the privately retained counsel who represented him at one point of the proceedings.

4. Petitioner failed to exhaust his state remedies as to each and every prong of his argument.

5. Since the Supreme Court of Louisiana has heard and rejected petitioner's arguments, its decision is presumed correct and it is unnecessary for this Court to hold an evidentiary hearing.

None of these arguments contain any substance. First, this Court never dismissed the instant suit. Second, 28 U.S.C. § 2242 does not require that the person who has custody over the petitioner be named in the body of the habeas petition, as long as the custodian is named as the respondent and served as a party. Section 2242 merely states that an application for a writ of habeas corpus shall allege "the name of the person who has custody over him." Numerous cases have interpreted this to mean that the application is not vaid if "the party under whose custody the prisoner is detained has not been named, *or served, as respondent.*" (Emphasis added.) Morehead v. State of California, 339 F.2d 170, 171 (9th Cir. 1964); *to same effect see*, King v. State of California, 356 F.2d 950 (9th Cir. 1966); Osborn v. Commonwealth Court etc., 277 F.Supp. 756 (W.D.Pa.1967). *Compare*, Jones v. Biddle, 131 F.2d 853 (8th Cir. 1942).

Third, the state makes the irrelevant assertion that since the petitioner was represented by private counsel, he cannot now complain of the equality of his rep-

resentation. It is not necessary to reach the merits of this claim for even if it were an accurate statement, our decision to grant petitioner's habeas application is based upon other grounds, and we have not found it necessary to question the competence of any of petitioner's attorneys. In all appearances before this Court, Lawrence has been ably represented by Mr. Louis B. Merhige who has tirelessly argued for petitioner's release.

 Fourth, if the petitioner did not exhaust his state remedies for release, we do not know what they are, and the state's answer has failed to adumbrate what issues were not presented to the Louisiana Supreme Court.

 Fifth, the state's argument that the Louisiana Supreme Court's denial of habeas relief should be presumed correct and that a federal evidentiary hearing is unnecessary ignores the explicit provisions of 28 U.S.C. § 2254. If we were to approve the state's argument, we would be abrogating the congressional authority for federal habeas relief. Accordingly,

It is the order of the Court that the petition of James Lawrence for a writ of habeas corpus, be, and the same is hereby, granted.

It is the further order of the Court that the conviction of petitioner James Lawrence in Section "G" of the Criminal District Court for the Parish of Orleans and the sentence imposed upon petitioner by that court on April 8, 1968, be, and the same is hereby, vacated and set aside.

It is the further order of the Court that Warden C. Murray Henderson immediately release the petitioner James Lawrence from custody subject to the condition that the duty to comply with this order, be, and the same is hereby, stayed for ten days from the date of this order so that the state may, if it so desires, vacate the judgment of conviction and schedule the retrial of petitioner within forty-five days from the date of this order. If petitioner's trial commences within forty-five days from the date of this order, then the execution of this order is suspended pending the outcome of the new trial. Otherwise, the petitioner shall be discharged immediately from custody.