362 So.2d 530 (1978)
STATE of Louisiana
v.
Calvin WILLIAMS.
No. 61629.
Supreme Court of Louisiana.
September 5, 1978.
*531 Ivan L. R. Lemelle, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Robert F. Barnard, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Calvin Williams and Carl Williams were charged in the same indictment with the first degree murder of Keith Norse. The state elected to try Calvin Williams separately. After a trial by jury, Calvin Williams was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt; and the jury unanimously recommended a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. The trial judge sentenced defendant in accordance with the recommendation of the jury. On appeal, defendant relies on five assignments of error for reversal of his conviction and sentence.[1]

ASSIGNMENT OF ERROR NO. 1
Defendant contends the state presented no evidence to prove that he was guilty as a principal to the crime of first degree murder. This alleged error was urged by defendant as a basis for his motion for a new trial which was denied by the trial judge.
Pursuant to La.R.S. 14:24, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are guilty as principals. State v. Lovett, 359 So.2d 163 (La.1978); State v. Willis, 322 So.2d 169 (La.1975); State v. Broussard, 312 So.2d 325 (La.1975). This court's review of a denial of a motion for a new trial based on an allegation of no evidence is limited to a determination of whether there is some evidence to support a verdict. State v. Sheppard, 350 So.2d 615 (La.1977).
The record reveals that, on the evening of December 28, 1976, Keith Norse (the victim), *532 Norbert Matthews, Frederick Gibson and Thaddeus Griffin departed from a neighborhood lounge where they had seen defendant and his brother Carl earlier in the evening. After walking a short distance, Matthews left Norse, Gibson and Griffin to return to his home. As the three men continued on, they were approached by defendant and his brother, whereupon Carl Williams at gunpoint ordered Norse to stop and fired a shot at him. Gibson and Griffin immediately fled from the scene but Griffin, after running some distance, turned and observed Carl Williams holding Norse. Two or three additional shots were fired. Griffin continued to run but turned a second time to observe what was transpiring. As he did so, defendant fired at him. In the meantime, Gibson had caught up with Matthews and related to him that defendant and his brother had shot Norse. They returned to the scene of the crime where they discovered Carl Williams standing over the victim's body with defendant several feet behind. The victim was still breathing at the time. On seeing Matthews and Gibson approaching, defendant and his brother fled. The victim had been shot three times in the head and once in the left hand. Death was caused by a bullet passing through his brain. Subsequently, a green army fatigue jacket which had been worn by defendant during the commission of the crime was recovered by the police and in one of the pockets a .38 caliber gun was discovered. Defendant was later arrested and charged with the first degree murder of Norse; Carl Williams was never apprehended.
Our review of the record convinces us that there was some evidence that defendant was guilty as a principal to the crime of first degree murder in that he directly participated in the crime and/or aided and abetted in its commission. Accordingly, the trial judge did not err in denying defendant's motion for a new trial on this ground.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in permitting the state to introduce in evidence a green army fatigue jacket allegedly worn by defendant during the commission of the crime. He argues that the jacket was not properly identified as being related to the case.
At trial, Norbert Matthews, Frederick Gibson and Thaddeus Griffin testified that, when the crime was committed, defendant was wearing a green army fatigue jacket, blue jeans, a knit hat and glasses. All three witnesses stated that the jacket exhibited to them at trial was the same or similar in appearance to that which was worn by defendant during the commission of the instant offense. Subsequently, Officer Martin Venezia of the New Orleans Police Department testified that a search warrant was executed at the residence of defendant's mother who informed the police that defendant was also living at that address. During the search of the residence, the police seized a green army fatigue jacket in the pocket of which was discovered a .38 caliber gun. Officer Venezia tagged and initialed the jacket and stored it in the evidence locker at the police station where it remained until brought to court on the day of trial. Over defense objection, the trial judge allowed the jacket to be admitted in evidence.
To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. King, 355 So.2d 1305 (La. 1978); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. State v. King, supra; State v. Provost, 352 So.2d 661 (La. 1977); State v. Williams, 341 So.2d 370 (La. *533 1976); State v. Collins, 328 So.2d 674 (La. 1976). Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the jury. State v. King, supra; State v. Hayes, 306 So.2d 705 (La.1975); State v. Freeman, 306 So.2d 703 (La.1975); State v. Dotson, supra; State v. Wright, 254 La. 521, 225 So.2d 201 (1969).
Defendant's contention that the jacket was not properly identified as being related to the case is without merit. The witnesses to the crime testified that the jacket was the same or similar in appearance to that worn by defendant during the commission of the crime. Moreover, the jacket was properly stored from the time of its recovery from defendant's residence until brought to court on the day of trial. Clearly, it was more probable than not that the jacket was related to the case. Hence, the trial judge properly permitted its introduction in evidence.
Defendant also contends the trial judge erred in admitting the jacket in evidence over his objection on the ground that it was unlawfully seized pursuant to an invalid search warrant. He argues that the search warrant was invalid in that it was based on hearsay information. No motion to suppress the evidence was filed by defendant either before or during trial.
Under La.Code Crim.P. art. 703, when a tangible object is sought to be excluded from evidence because of an unconstitutional search and seizure, a defendant must file a motion to suppress the evidence. Otherwise, he is deemed to have waived any objection to its admission in evidence based on an infirmity in the search and seizure. State v. Jones, 340 So.2d 563 (La.1976); State v. Keys, 328 So.2d 154 (La.1976); State v. Womack, 283 So.2d 708 (La.1973); State v. Cormier, 272 So.2d 686 (La.1973); State v. Cryer, 262 La. 575, 263 So.2d 895 (1972); State v. Lawrence, 260 La. 169, 255 So.2d 729 (1971); State v. Wallace, 254 La. 477, 224 So.2d 461 (1969). Since no motion to suppress was filed in the present case, defendant's objection to the admission of the jacket in evidence based on the alleged unlawful search and seizure was waived.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in denying his motion for a mistrial grounded on the claim that the prosecutor repeatedly attempted to elicit hearsay evidence from a state witness on rebuttal. He argues that this alleged prosecutorial misconduct prejudiced his defense and thereby necessitated the granting of a mistrial.
At trial, the defense called to the stand Mrs. Albertha Scott who testified that she had observed defendant's brother, Carl Williams, knock the victim of the crime to the ground and shoot him. She stated that defendant was not present during the commission of the crime. On cross-examination by the state, the witness denied that shortly after the crime was committed she had informed the police that an individual named Willie Norwood and an unidentified black male had committed the crime. She likewise denied that a few days after the crime she had told the police that both defendant and his brother were responsible for the murder.
To rebut Mrs. Scott's testimony, the state recalled to the stand Officer Martin Venezia who testified that during the early morning hours after the crime was committed he had received information relative to the murder from Mrs. Scott. When the witness was asked what information Mrs. Scott had relayed to him, defense counsel objected to the question on the ground of hearsay. The trial judge sustained the objection. Thereafter, the officer testified that he had again conversed with Mrs. Scott a few days after the murder at which time he received information concerning defendant and his brother. The state then asked Venezia to state what this information was. Again defendant's objection on the ground of hearsay was sustained. Further attempts by the prosecutor to elicit from the *534 officer the content of statements made by Mrs. Scott to him regarding who had committed the murder likewise were objected to by defense counsel. The state argued that the statements made by the defense witness to the police were admissible as prior contradictory statements to impeach the witness' testimony at trial. Nevertheless, the trial judge again sustained the defense objections. Subsequently, Venezia was asked whether the information which he had received from Mrs. Scott relative to the instant offense was inconsistent with her trial testimony and with information which had been furnished to him by other witnesses to the crime. Defendant reurged his objection to this inquiry and moved for a mistrial. The trial judge sustained the objection but denied the motion for a mistrial. Thereafter, he asked defense counsel if he wished for the jury to be admonished. Defense counsel replied in the negative.
Each side has the right to impeach the testimony and the credibility of every witness sworn on behalf of the other side. La.R.S. 15:486. The credibility of a witness may be impeached by prior contradictory statements. La.R.S. 15:493 provides:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
In the instant case, Mrs. Scott denied that she had made statements to the police regarding who had committed the instant offense which were inconsistent with her trial testimony. The state, therefore, had laid a proper foundation for impeachment of the defense witness' testimony by proof of prior contradictory statements. Although the trial judge sustained defendant's hearsay objections to questions posed by the state to Officer Venezia on rebuttal, the questions were proper since the state thereby sought to introduce evidence of prior contradictory statements made by Mrs. Scott to impeach her credibility. Because the questions posed by the prosecutor were proper, they did not warrant the granting of a mistrial. In any event, in view of the fact that the trial judge sustained defense objections to the questions and offered to admonish the jury which offer was declined by defense counsel, defendant cannot claim to have suffered any prejudice from the prosecutor's interrogation of the witness. Hence, the trial judge did not err in denying defendant's motion for a mistrial.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his motion for a new trial grounded on the claim that he had discovered after trial new and material evidence consisting of the testimony of Roy Milton Smith which allegedly contradicted the trial testimony of Thaddeus Griffin, an eyewitness to the crime.
At trial, Thaddeus Griffin testified that, on the evening of December 28, 1976, as he was walking with Norbert Matthews, Frederick Gibson and Keith Norse through a housing project, he heard gunshots and immediately fled. After running a short distance, he looked back and saw defendant's brother holding Norse. Griffin continued to run but looked back a second time to observe what was happening. As he glanced back, he saw defendant point a gun and fire a shot at him.
At the hearing on defendant's motion for a new trial, the defense called as a witness Roy Milton Smith who testified that he was driving near the scene of the crime when he saw Griffin running toward his vehicle. As he stopped his car, he heard a noise and simultaneously saw a flash. Immediately, he fell to the floor of the car and Griffin jumped into the vehicle. He and Griffin then drove off. Smith stated that he did *535 not see who had fired the shot, explaining that the gunshot took him by surprise. At the conclusion of the witness' testimony, defense counsel contended that this evidence contradicted Griffin's testimony at trial that he had seen defendant fire a shot at him. He argued that, since both Griffin and Smith had the same vantage point from which to observe who had fired the shot and yet Smith had testified that he did not see who had fired the gun, it followed that Griffin likewise did not see who had shot at him contrary to his testimony at trial. Rejecting defense counsel's argument, the trial judge denied the motion for a new trial.
La.Code Crim.P. art. 851 dictates that the court, on motion of the defendant, shall grant a new trial whenever:
. . . . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
. . . . .
This court has consistently held that the trial judge is accorded considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its reliability, and his ruling will be disturbed on appeal only where there is a clear showing of abuse of discretion. In considering a motion for a new trial based on newly discovered evidence, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Lovett, 359 So.2d 163 (La.1978); State v. Provost, 352 So.2d 661 (La.1977); State v. Williams, 343 So.2d 1026 (La.1977); State v. Brown, 338 So.2d 686 (La.1976).
In the instant case, although Smith testified that he did not see who had fired the shot, he explained that the events surrounding the shooting caught him by surprise which impaired his ability to observe who was responsible for the shooting. Therefore, Smith's testimony did not in fact contradict that of Griffin adduced at trial that Griffin saw defendant fire at him. If anything, Smith's testimony corroborated Griffin's assertion that Griffin had been shot at. Hence, we conclude that this evidence produced by defendant at the new trial hearing was not so material that it would have produced a different result than the verdict reached. Accordingly, the trial judge did not err in denying defendant's motion for a new trial.
Assignment of Error No. 5 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs, disagreeing with the treatment of illegal seizure argument in Assignment # 3.
NOTES
[1] Defendant has neither briefed nor argued Assignment of Error No. 2. Therefore, we consider it to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La.1975).